UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LCO DESTINY, LLC,

                                              **Plaintiff,**

-against-                                                   07-CV-1140

MICHAELS STORES, INC., MICHAELS STORES
PROCUREMENT COMPANY INC., BP
INDUSTRIES INCORPORATED,

                                             **Defendant(s).**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.  INTRODUCTION**

      Plaintiff LCO Destiny, LLC ("LCO") commenced this action asserting claims sounding in federal trademark infringement (First and Second Counts), deceptive acts (Third Count), false advertising (Fourth Count), unfair competition (Fifth Count), breach of contract (Sixth Count), and fraudulent misrepresentation and inducement (Seventh Count).  Defendant BP Industries Incorporated ("BP") moves to dismiss the Seventh Count pursuant to Fed. R. Civ. P. 12(b)(6).

**II. STANDARD OF REVIEW**

      A motion brought under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims pleaded in a case.  On a motion to dismiss, all factual allegations in the complaint

are accepted as true, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), and the Court must determine whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007). As such, the Court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id., at 1965; see Barkley v. Olympia Mortgage Co., 2007 WL 2437810, at * 9 (E.D.N.Y. Aug. 22, 2007).

### III. BACKGROUND

LCO is a manufacturer and distributor of picture frames, and has used the trademarks "TIMELESS" and "TIMELESS FRAME" to market and sell picture frames in New York State and elsewhere. Compl. ¶¶ 9-10. LCO secured U.S. Trademark Registration No. 3,028,273 for the trademark "TIMELESS FRAMES" in connection with "picture frames." Compl. ¶ 11. BP marketed and sold picture frames under the trademark "TIMELESS ELEGANCE" in New York State and elsewhere. Compl. ¶ 8. By letter dated April 17, 2007, LCO's attorney notified BP of LCO's use of, registration of, and rights in the term "TIMELESS FRAMES" and asked for a written explanation of BP's intentions regarding any continued use of the term "TIMELESS" or any substantially similar term in connection with picture frames and related products. Compl. ¶ 14. The letter also inquired about BP's then-pending application to register the trademark "TIMELESS ELEGANCE" with the United States Patent and Trademark Office ("USPTO"). Compl. ¶ 14.

By letter dated June 11, 2007, BP's attorney responded that BP did not wish to incur the considerable expense to litigate the matter and had decided to withdraw its application to register "TIMELESS ELEGANCE."  Compl. ¶ 15.  BP also indicated that it had decided to take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products, and that it believed this matter to be closed.  Compl. ¶ 15.  BP filed a formal request with the USPTO on August 9, 2007 to abandon BP's then-pending application to register "TIMELESS ELEGANCE."  Compl. ¶ 16.  The USPTO issued a formal Notice of Abandonment of the application on August 10, 2007.  Compl. ¶ 16.

LCO contends that it "relied upon the representations, promises, assurances, and agreement of Defendant BP in taking immediate steps to phase out the use of 'TIMELESS ELEGANCE' for its products in refraining from immediate enforcement of its rights against Defendant BP."  Compl. ¶ 18.   However, LCO learned that BP continued to market, distribute, and sell picture frames under the "TIMELESS ELEGANCE" mark.  Compl. ¶ 19.  LCO asserts that BP "intended and planned as of the June 11, 2007 letter that it would not take immediate steps to phase out the use of 'TIMELESS ELEGANCE' for its products, but rather, knowingly and intentionally made the false representation and promise that it would take such immediate steps."  Compl. ¶ 19.   In Count Six, entitled "Breach of Contract,"  LCO asserts:

> Defendant BP has breached its agreement with Plaintiff to take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products, which has allowed Defendant BP to gain illegitimate benefits and caused Plaintiff damages.

Compl. ¶ 33.

In Count Seven, entitled "Fraudulent Misrepresentation and Inducement," LCO

3

asserts:

> Defendant BP fraudulently misrepresented to Plaintiff its decision and intent to take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products and fraudulently induced Plaintiff to forego further enforcement of its rights against Defendant BP.

Compl. ¶ 35. LCO further alleges in Count Seven that "Defendant BP has illegitimately benefitted from, and Plaintiff has been damaged by, Defendant BP's fraudulent misrepresentation and inducement." Compl. ¶ 36.

BP moves to dismiss Count Seven on the grounds that, under New York law,[1] a cause of action for fraud may not be maintained simultaneously with a cause of action for breach of contract when the only alleged fraud relates to the intention to perform under the contract.

## IV.  DISCUSSION

"The [United States Court of Appeals for the] Second Circuit has held that, as a general rule, the allegation that a party entered into a contract intending to breach that contract is insufficient to support a claim for fraud under New York law." Marriott Intern., Inc. v. Downtown Athletic Club of New York City, Inc., 2003 WL 21314056, at *6 (S.D.N.Y. June 9, 2003)(citing Manning v. Utils. Mut. Ins. Co., 254 F.3d 387, 401 (2d Cir. 2001)(concluding that a representation that "is merely a statement of intent to perform under the contract cannot constitute fraud"); Bridgestone/Firestone, Inc., v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996)(dismissing a fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally-false statements . . . indicating [defendant's] intent to perform under the contract")); see TVT Records v. Island

---

[1] Both parties agree that New York law applies.

4

Def Jam Music Group, 412 F.3d 82, 90 (2d Cir. 2005)(agreeing with defendant's contention that "under New York law, the failure to disclose an intention to breach is not actionable as a fraudulent concealment"); Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995)("A cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing.").  Thus, when applying New York law, the federal district courts "have consistently dismissed fraud claims predicated on allegations that defendants did not intend to meet their contractual obligations." Marriott Intern., 2003 WL 21314056, at *6 (citing numerous Southern District cases); see Snyder v. Cooper, 2007 WL 1879749 , * 3 (N.D.N.Y. June 29, 2007) ("To the extent Plaintiffs assert claims sounding in fraudulent inducement and unjust enrichment, the claims are barred by the exclusive remedy of a breach of contract claim.")(citing, *inter alia,* 195 Lombardy Street, L.L.C. v. McCarthy, 2006 WL 3076563, at * 4 (N.Y. Sup. Ct., Kings Cty, Jan. 4, 2006) (slip op.) ("[P]laintiff's allegation that defendant fraudulently induced it to enter into the contract while never intending to sell the premises is simply a breach of contract claim."));  see also Factory Associates & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC, 2007 WL 1834599, at *7 (N.D.N.Y.  June 26, 2007)("no fraud claim exists because the claim is no different than Plaintiff's breach of contract claims . . . and seeks the same damages").

However, claims for breach of contract and fraud may coexist when the plaintiff demonstrates that there exists (1) a legal duty separate from the duty to perform under the contract, (2) a fraudulent misrepresentation collateral or extraneous to the contract, or (3) special damages that have been caused by the misrepresentation and are unrecoverable

5

as contract damages. Bridgestone/Firestone, 98 F.3d at 20; accord Marriott Intern., Inc., 2003 WL 21314056, at *6 n. 3.[2]

> LCO acknowledges the general rule and its exceptions, but argues that
>
> until there is a final determination of both the existence of a valid,
> enforceable contract and the nature of the terms of such contract, it is
> impossible to determine whether the false promises giving rise to the fraud
> claim are, or are not, "collateral or extraneous" to binding contractual
> promises.

Pl. Mem. L. p. 3 (citing Deerfield Communications Corp. v. Chesebrough-Pounds, Inc., 68 N.Y.2d 954, 956 (1986)). LCO also contends that the motion must be denied because Fed. R. Civ. P. 8(e) allows for alternative pleading. The Court disagrees.

> The "collateral or extraneous" exception applies where a defendant's
> misrepresentation induces the plaintiff to enter into a contract and is distinct
> from the promise to perform. . . . The "collateral or extraneous" exception
> does not apply where the plaintiff alleges only that the defendant entered
> into an agreement that he intended to breach.

---

[2] As explained by the Southern District in Marriott Intern., Inc.:

> There is some confusion in the New York case law regarding the rule adhered to in Bridgestone/Firestone and the other cases cited. The Cougar Audio Court explained: "The rule derives from a very long and very puzzling line of New York cases. On at least four occasions, New York's Court of Appeals has expressly held that 'a contractual promise made with the undisclosed intention not to perform it constitutes fraud.' At the same time, however, there are numerous Appellate Division cases that state precisely the opposite rule." [Cougar Audio, Inc. v. Reich, No. 99 Civ. 4498, 2000 WL 420546, at *6 n. 4 (S.D.N.Y. Apr.18, 2000)](citation omitted). The Second Circuit and courts in this district have resolved the conflict between the state cases by following the Appellate Division's rule and crafting fact-specific exceptions that account for the Court of Appeals' decisions. See, e.g., Bridgestone/Firestone, 98 F.3d at 20 (distinguishing Deerfield Communication Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986), in which the Court of Appeals refused to dismiss a fraud claim based on a false promise intended as an inducement to enter a contract, on the ground that the fraudulent misrepresentation was extraneous to the contract); [Papa's June Music, Inc. v. McLean, 921 F. Supp. 1154, 1161 (S.D.N.Y.1996)] (distinguishing Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112, 629 N.Y.S.2d 1009, 653 N.E.2d 1179 (1995), in which the Court of Appeals refused to dismiss a fraud claim based on promises to uphold an agreement, on the ground that the defendant in that case had a legal duty to the plaintiff separate from the duty to perform under the contract).

2003 WL 21314056, at *6 n. 3.

6

Marriott Intern., Inc., 2003 WL 21314056, at *7 (citing, *inter alia* Deerfield, 68 N.Y.2d at 956). As this Court has held, the "collateral or extraneous" exception articulated in Deerfield does not apply when the promise at issue is not separate and distinct from the terms of the contract. OHM Remediation Services Corp. v. Hughes Environmental Systems, Inc., 952 F. Supp. 120, 124 (N.D.N.Y. 1997).

Looking to the allegations in the Complaint, there is no plausible basis to apply the "collateral or extraneous" exception. The allegations in the Complaint asserting a fraudulent representation *are not distinct* from the promise to perform under the alleged contract. Rather, they are one and the same. Compare Compl. ¶ 33 ("Defendant BP has breached its agreement with Plaintiff to take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products") with Compl. ¶ 35 ("Defendant BP fraudulently misrepresented to Plaintiff its decision and intent to take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products"); see also Compl. ¶ 19 (BP "intended and planned as of the June 11, 2007 letter that it would not take immediate steps to phase out the use of 'TIMELESS ELEGANCE' for its products, but rather, knowingly and intentionally made the false representation and promise that it would take such immediate steps."). The promise underlying the fraud claim, as pled, is neither collateral nor extraneous to the terms of the alleged contract and, therefore, LCO can find no protection under the "collateral or extraneous" exception or Deerfield. See Telecom International America, LTD., v. AT&T Corp., 67 F. Supp.2d 189, 208 (S.D.N.Y. 1999) ("TIA's reliance on Deerfield is unavailing. In Deerfield . . . the alleged fraudulent promise was independent of the buyer's duties to abide by the terms of the sales contract executed by the parties. Here, TIA points to no collateral fraudulent promise. . ." )(citations omitted); see also Town

7

of Haverstraw v. Columbia Electric Corp., 237 F. Supp. 2d 452, 456 (S.D.N.Y. 2002) (explaining that a fraud claim is viable where a plaintiff is induced to enter a contract based on extraneous representations but not where the misrepresentation is merely the promise to perform under a contract).

LCO's argument premised on Rule 8's alternative pleading allowance is also unavailing. A fraud claim does not exist under New York law when the claim is premised solely upon the allegation that a party made false statements of intent to perform under an agreement. See Druyan v. Jagger, 508 F. Supp. 2d 228, 240 (S.D.N.Y. 2007) (holding that allegations of intent or concealment that merely relate to defendant's performance of contractual obligations "do not state a claim for fraud under New York law"); Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp.2d 231, 244 (S.D.N.Y. 2006) ("Plaintiffs' allegations of false statements of intent to perform under the Agreements are insufficient, standing alone, to support Plaintiffs' fraud claim."). Plaintiff has pleaded that a contract was formed but has not asserted facts sufficient to support one of the fraud exceptions to the general rule. Further, the fraud claim, as pled, is premised solely upon the allegation that a party made false statements of intent to perform under the alleged agreement. Simply stated, Plaintiff has not asserted facts that would allow the fraud claim to stand on its own. See Papa's-June's Music, Inc. v. McLean, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) ("Because the only fraud alleged arises out of the same facts that serve as the basis for the breach of contract claim, Papa's-June's fraud claim fails to state a claim for fraud on which relief can be granted.").

> [T]he alternative pleadings rule does not permit a plaintiff to treat fraud and contract as interchangeable claims, and whether a plaintiff asserts contract claims is immaterial since the fraud claim must stand on its own. Fraud is not

> an alternative to quasi-contract, whether or not "strategic reasons" preclude pleading that claim. Additionally, the "extraneous to a contract" exception . . . is not satisfied simply because a jury could find that there was no contract. It is illogical to speak of a statement being "extraneous" to that which does not exist; surely the exception distinguishes between statements that create, or are directly pursuant, to the alleged agreement and statements that relate to an existing or future agreement but are distinct from promises to perform.

Atla-Medine v. Crompton Corp., 2001 WL 428249 at *1 (S.D.N.Y. April 26, 2001)(citations omitted); see Town of Haverstraw, 237 F. Supp. 2d at 455-56 ("Even though the breach of contract claim and the fraud claim are pleaded in the alternative, it does not follow that the fraud claim is collateral to the alleged breach of contract" where "[t]he statement on which the Town bases its fraud claim is the exact statement that the Town claims created the contract."). Inasmuch as the fraud claim, as pled, is not cognizable under New York law, the alternative pleading rule offers no solace in the instant case.

Accordingly, Defendant's motion must be granted and the fraud claim dismissed. While a dismissal under Rule 12(b)(6) is generally with prejudice, Finger v. Superintendent McFinnis, 2004 WL 1367506, at *4 (S.D.N.Y. June 16, 2004), a court may dismiss a claim without prejudice and grant leave to file an amended complaint when there is a possibility that Plaintiff could asserts a plausible claim under the dismissed theory. Van Buskirk v. The New York Times Co., 325 F.3d 87, 91 (2d Cir. 2003). Here, it is possible that Plaintiff could plead a legally viable fraud claim. See Hudson Optical Corp. v. Cabot Safety Corp., 971 F. Supp. 108, 109 (E.D.N.Y. 1997)("Although a promise made with a preconceived and undisclosed intention of not performing [the agreement] can give rise to a fraudulent inducement claim, the promise must be collateral or extraneous to the terms of the agreement, not merely a promise to perform under the express terms of the contract, even if made with no intention to abide by the stated intention.")(citations omitted), aff'd 162

9

F.3d 1148 (2d Cir. 1998);  Atla-Medine, 2001 WL 428249 at *5 (indicating that the plaintiff's repleaded fraud claim could survive a Rule 12(b)(6) motion because it did not allege the existence of a contract).  To the extent Plaintiff believes it can plead a legally viable fraud claim, the dismissal will be without prejudice to re-pleading.

**V.  CONCLUSION**

For the aforementioned reasons, BP's motion [dkt. # 8] is granted and the fraud claim is dismissed without prejudice to repleading.  Plaintiff is granted leave to re-plead within fifteen (15) days of the date of this Decision and Order.

**IT IS SO ORDERED**

DATED:  February 12, 2008

_____
Thomas J. McAvoy
Senior, U.S. District Judge