**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LCO DESTINY, LLC,**

          **Plaintiff,**

-against-              **07-CV-1140**

**MICHAELS STORES, INC., MICHAELS STORES**
**PROCUREMENT COMPANY INC., BP**
**INDUSTRIES INCORPORATED,**

          **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

   Plaintiff LCO Destiny, LLC ("LCO") asserts claims sounding in federal trademark infringement (First and Second Counts), deceptive acts (Third Count), false advertising (Fourth Count), unfair competition (Fifth Count), and fraudulent misrepresentation and inducement (Sixth Count). Defendant BP Industries Incorporated ("BP") moves to dismiss the Sixth Count pursuant to Fed. R. Civ. P. 12(b)(6).

### II. STANDARD OF REVIEW

   A motion brought under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims pleaded in a case. On a motion to dismiss, all factual allegations in the complaint are accepted as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam), and

1

the Court must determine whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007). As such, the Court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id., at 1965; see Barkley v. Olympia Mortgage Co., 2007 WL 2437810, at *9 (E.D.N.Y. Aug. 22, 2007).

### III.    BACKGROUND

LCO is a manufacturer and distributor of picture frames, and has used the trademarks "TIMELESS" and "TIMELESS FRAMES" to market and sell picture frames in New York State and elsewhere. First Am. Compl. ¶ 9. LCO secured U.S. Trademark Registration No. 3,028,273 for the trademark "TIMELESS FRAMES" in connection with "picture frames." First Am. Compl. ¶ 11. BP marketed and sold picture frames under the trademark "TIMELESS ELEGANCE" in New York State and elsewhere. First Am. Compl. ¶ 8. By letter dated April 17, 2007, LCO's attorney notified BP of LCO's use of, registration of, and rights in the phrase "TIMELESS FRAMES" and asked for a written explanation of BP's intentions regarding any continued use of the term "TIMELESS" or any substantially similar term in connection with picture frames and related products. First Am. Compl. ¶ 14. The letter also inquired about BP's then-pending application to register the trademark "TIMELESS ELEGANCE" with the United States Patent and Trademark Office ("USPTO"). First Am. Compl. ¶ 14.

By letter dated June 11, 2007, BP's attorney responded that BP did not wish to incur the considerable expense to litigate the matter and had decided to withdraw its application to register "TIMELESS ELEGANCE." First Am. Compl. ¶ 15. BP also

indicated that it had decided to take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products, and that it believed this matter to be closed. First Am. Compl. ¶ 15. After an investigation and a reminder by LCO's attorney, BP filed a formal request with the USPTO on August 9, 2007 to abandon BP's then-pending application to register "TIMELESS ELEGANCE." First Am. Compl. ¶ 16. The USPTO issued a formal Notice of Abandonment of the application on August 10, 2007. First Am. Compl. ¶ 16.

By letter dated September 13, 2007, LCO's attorney requested a written explanation from Defendant Michaels Stores detailing their intentions regarding their continued sales of picture frames under the trademark "TIMELESS ELEGANCE," making Michaels Stores aware of LCO's registered trademark for "TIMELESS FRAMES." First Am. Compl. ¶ 20. By letter dated October 10, 2007, an attorney for Defendant Michaels Procurement responded to LCO's request by refusing to provide any explanation regarding plans for any continued use of the "TIMELESS ELEGANCE" trademark. First Am. Compl. ¶ 21. On October 17, 2007, BP provided LCO with confirmation that it was continuing to "sell an exclusive line of frames under the TIMELESS ELEGANCE name to Michaels." First Am. Compl. ¶ 22.

LCO contends that it "believed [LCO's June 11, 2007] representation to be true, justifiably relied upon such representation, and was deceived by such representation in refraining from immediately enforcing its rights against Defendant BP." First Am. Compl. ¶ 18. However, LCO learned that BP continued to market, distribute, and sell picture frames under the "TIMELESS ELEGANCE" mark. First Am. Compl. ¶ 19. LCO asserts that BP "had made no decision as of the June 11, 2007 letter that it would take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products, but instead had

3

determined that it would not take such steps [and] . . . knowingly and intentionally, and grossly, wantonly, and willfully, made the false representation to Plaintiff that it had made such a decision." First Am. Compl. ¶ 17. In Count Six, entitled "Fraudulent Misrepresentation and Inducement," LCO asserts:

> Defendant BP fraudulently misrepresented to Plaintiff its decision and intent to take immediate steps to phase out the use of "TIMELESS ELEGANCE" for its products and fraudulently induced Plaintiff to forego further, immediate enforcement of its rights against Defendant BP."

First Am. Compl. ¶ 33. LCO further alleges in Count Six that "Defendant BP has illegitimately benefitted from, and Plaintiff has been damaged by, Defendant BP's fraudulent misrepresentation and inducement." First Am. Compl. ¶ 34.

BP moves to dismiss Count Six on the grounds that LCO has failed to allege facts that create a strong inference of fraudulent intent as required by Federal Rule of Civil Procedure 9(b), and because LCO has not alleged, and cannot allege, damages resulting from the alleged fraud as is required by New York law.

## IV.   DISCUSSION

### a)   Scienter

An action for fraud must be viewed in light of Fed. R. Civ. P. 9(b) which requires that "the circumstances constituting fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b); Shields v. Citytrust Bancorp, 25 F.3d 1124, 1127 (2d Cir. 1994); Auerbach v. Amir, 2008 WL 479361, at *7 (E.D.N.Y. Feb. 19, 2008). This particularity requirement is satisfied when a plaintiff properly pleads "the time, place, speaker, and sometimes even the content of the alleged misrepresentation." Ouaknine v. MacFarlane, 897 F.2d 75, 79

4

(2d Cir. 1990); Braun v. Giarratano, 2002 WL 1916368, at *5 (N.D.N.Y. Jul. 30, 2002). Rule 9(b) further states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b)'s primary purposes are threefold: (1) to provide the defendant with fair notice of the claims; (2) to protect the defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 317 (S.D.N.Y. 2006). To serve these purposes, the Second Circuit has ruled that the relaxation of Rule 9(b)'s specificity requirement for scienter "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Shields, 25 F.3d at 1128 (citations omitted); Goplen v. 51job, Inc., 453 F. Supp. 2d 759, 771 (S.D.N.Y. 2006). Therefore, the Second Circuit has stated that a plaintiff is required to allege facts that give rise to a "strong inference" of fraudulent intent, Shields, 25 F.3d at 1128, which can be established by showing either (a) facts that show that the defendant had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness." Id.; see In re Carter-Wallace, Inc. Securities Litigation, 220 F.3d 36, 39 (2d Cir. 2000); Sweringen v. New York State Dispute Resolution Ass'n., 2007 WL 2403197, at *5 (N.D.N.Y. Aug. 17, 2007).

In its First Amended Complaint, LCO contends that BP's letter of June 11, 2007, wherein BP made assertions that it would "take immediate steps to phase out the use of the 'Timeless Elegance' mark for its products," was a fraudulent misrepresentation in that BP never intended to follow through with the immediate phase out of the "Timeless Elegance" mark. First Am. Compl., ¶¶ 15, 33. The specificity with which LCO identifies

the alleged fraudulent statements satisfies Rule 9(b)'s particularity requirement concerning the "time, place, speaker, and sometimes even the content of the alleged misrepresentation."  See Shields, 25 F.3d at 1128-29 (holding that press releases and publicly filed corporate documents produced by the defendant were properly identified by the plaintiff as the alleged fraudulent statements); see also Sweringen, 2007 WL 2403197, at *4 (plaintiff's identification of an advertisement produced by the defendant, as well as statements made by the defendant's executive director as the alleged fraudulent statements satisfied the "time, place, speaker, and content" requirement).  What is left for LCO is to raise the requisite strong inference of fraudulent intent.

The first of the two methods by which LCO may establish a strong inference of fraudulent intent is by demonstrating that BP had both the motive and the opportunity to commit fraud.  The Second Circuit has stated that "[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.  Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged."  Shields, 25 F.3d at 1130; Gildepath Holding B.V. v. Spherion Corp., 2007 WL 2176072, at *13 (S.D.N.Y. Jul. 26, 2007).

LCO alleges in its First Amended Complaint that BP's motive to commit fraud was to "induce [LCO] to forego further, immediate enforcement of its rights against Defendant BP."  First Am. Compl., ¶ 33.  BP responds by claiming that there would be no benefits to be gained by delaying inevitable litigation.  There are, however, concrete benefits that could be realized by BP through delaying LCO's litigation.  It is important to note that BP's "TIMELESS ELEGANCE" picture frames remained on sale through Michaels Stores for 4 months after BP assured LCO that it would take "immediate steps to phase out" the use of

6

the "TIMELESS ELEGANCE" name.  By dissuading LCO from seeking (and potentially receiving) a preliminary injunction preventing the further sale of allegedly infringing products, BP may have realized monetary gains through continued sales of the "TIMELESS ELEGANCE" products.  It can be inferred that BP may have hoped to eliminate its stock of "TIMELESS ELEGANCE" products through sales, thereby suffering no loss as a result of its use of "TIMELESS ELEGANCE".  BP all but admits this in its Reply Memorandum of Law when it states that "there is nothing inconsistent with a manufacturer's proposal in mid-June 2007 to 'phase out' use of a term on the products it manufacturers and the fact that products featuring the term remained available at a retailer's stores in mid-September of the same year."  Reply Mem. at 4-5.

BP correctly notes the general rule that where an alleged misrepresentation relates to future conduct, a plaintiff cannot satisfy its pleading burden merely by alleging that the future event did not occur. Id.[1]  However, the phrase upon which this claim turns is BP's assurance that it would take "immediate steps" to phase out the use of the "TIMELESS

---

[1] Defendant argues:

[I]t is well established that where - as here - the alleged misrepresentation relates to future conduct, a plaintiff cannot satisfy its pleading burden merely by alleging that the future event did not occur. See, e.g., Stamelman v. Fleishman-Hilard, Inc., Case No. 02 Civ. 8318 SAS, 2003 WL 21782645, at * 7 (S.D.N.Y. Jul. 31,2003) (dismissing fraud claim and noting that in a case involving a misrepresentation concerning future action, "(t)he defrauded party may not satisfy (its pleading) requirement simply by showing that the future event never occurred"); SNCB Corp. Fin. Ltd. v. Schuster, 877 F. Supp. 820, 826 (S.D.N.Y. 1994) (same); see also Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265,279 (S.D.N.Y. 2001) ("For there to be a fraud claim, there must be more than a conclusory allegation that the defendant had no intention to perform a promise of future action."); Songbird Jet Ltd., Inc. v. Amax Inc., 581 F. Supp. 912, 925 (S.D.N.Y. 1984) (dismissing fraud claim based upon defendant's failure to honor promise to sell jet to plaintiff: "Other than Rosefielde's charge that the defendant deliberately misrepresented its intention, there is not one iota of evidentiary fact offered to sustain this essential element (of fraudulent intent). This is a gossamer claim predicated on Rosefielde's opinion, entirely without evidential support. . . .")(footnote omitted).

7

ELEGANCE" name.  The question for the trier of fact is whether or not BP intended to take "immediate steps" at the time the promise was made, not whether it intended to do something in the future.   BP's 2-month delay in withdrawing its trademark application with the USPTO, and its continued sales of its product using the "TIMELESS ELEGANCE" name for 4 months after the June letter, provide a factual basis for a finder of fact to conclude that "immediate steps" were neither taken nor intended.

Furthermore, the Second Circuit has held that "[w]hile the mere non-performance of promises is insufficient to create an inference of fraudulent intent, intent may be found when a defendant violates an agreement so maliciously and so soon after it is made that his desire to do so before he entered into the agreement is evident." Powers v. British Vita, P.L.C., 57 F.3d 176, 185 (2d Cir.1995) (internal citations and quotations omitted), Nanopierce Technologies, Inc. v. Southridge Capital Management LLC, 2004 WL 2754653, at *7 (Dec. 2, 2004 S.D.N.Y.).  This suggests that, in a case such as this one, where "future events" include assertions that action will be taken immediately following an agreement, an inference of fraudulent intent may be found.

Moreover, it should be noted that "'[w]hether a given intent existed is generally a question of fact,' appropriate for resolution by the trier of fact." Press v. Chemical Investment Services Corp., 166 F.3d 529, 538 (2d Cir. 1999) (citations omitted).  Finally, LCO is correct in its assertion that it may plead based on information and belief because the facts concerning BP's intent are entirely within BP's knowledge at this time. See Bharucha v. Reuters Holdings PLC, 810 F. Supp. 37, 41-42 (E.D.N.Y. 1993).  Taking all of these factors into consideration, BP's motion to dismiss the fraud claim on this ground is denied.

**b)     Damages**

BP further seeks to dismiss LCO's fraud claim on the basis that LCO has not alleged, and cannot establish, damages resulting from the alleged fraud as required by New York law.[2] "Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) *resulting damage to the plaintiff*." Crigger v. Fahnestock and Co., Inc., 443 F. 3d 230, 234 (2d Cir. 2006) (emphasis added); see also Schlaifer Nance & Co. v. Estate of Warhol, 119 F. 3d 91, 98 (2d Cir. 1997); Jaufman v. Levine, 2007 WL 2891987, at *6 (N.D.N.Y. Sept. 28, 2007).  It is the fifth element, damages, that this Court now addresses.

In order to sustain a cause of action for fraud in New York, a plaintiff must show that he was "'damaged, injured, or harmed as a result of the asserted fraud,'" Spencer Trask Software and Information Services LLC v. Rpost Intern. Ltd., 383 F. Supp.2d 428, 454 (S.D.N.Y. 2003), and, when the plaintiff seeks damages as opposed to rescission, the plaintiff must demonstrate some concrete pecuniary loss.  See id.; Dornberger v. Metropolitan Life Ins. Co., 961 F. Supp. 506, 543 (S.D.N.Y. 1997).  New York's rule is often referred to as the "out-of-pocket" rule, whereby a plaintiff in a fraud action may only recover its own losses, as opposed to the potential gains a bargain may have provided (also known as the "benefit-of-the-bargain").  Ostano Commerzanstalt v. Telewide Systems, Inc., 794 F.2d 763, 766 (2d Cir. 1986); Sofi Classic S.A. de C.V. v. Hurowitz,

---

[2] For the purposes of the instant motion, both parties agree that New York law applies.

444 F. Supp.2d 231, 246-47 (S.D.N.Y. 2006). "At a minimum, the plaintiff[] must make factual allegations describing the pecuniary or out-of-pocket loss sustained as a result of the defendants' alleged misrepresentations in order to maintain a claim for damages based upon fraud. . . ." Spencer, 383 F. Supp. 2d at 455.

In Count Six, LCO merely alleges that "Defendant BP has illegitimately benefitted from, and Plaintiff has been damaged by, Defendant BP's fraudulent misrepresentation and inducement." First Am. Compl. ¶ 34. In its opposition Memorandum of Law, LCO provides no more specificity as to how it suffered pecuniary damage as the result of the alleged fraud, instead merely citing to paragraph 34 of the First Amended Complaint. However, Plaintiff asserts in the First Amended Complaint at paragraph 35 that "[b]y reason of Defendants' acts alleged herein, Plaintiff has and will suffer damage to its business, reputation, and good will." First Am. Compl. ¶ 35. Given this and the other allegations in the First Amended Complaint, it is plausible that Plaintiff could establish out-of-pocket damages caused by the purported fraud. Although Plaintiff will not be allowed to recover twice for the same injury under separate legal theories, see Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1997) ("A plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery."), Plaintiff has asserted sufficient facts to withstand the instant motion to dismiss. Defendant can renew its challenge to the claim by making a Rule 56 summary judgment motion after completion of discovery. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)("[A] complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' . . . This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose

of unmeritorious claims.")(quoting Fed. R. Civ. P. 8(a)).  Accordingly, the motion on this ground is denied.

## V.    CONCLUSION

For the reasons set forth above, Defendant BP's motion to dismiss Count Six in the First Amended Complaint [dkt. # 20] is denied.

**IT IS SO ORDERED**

DATED: June 17, 2008

_____
Thomas J. McAvoy
Senior, U.S. District Judge